## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WADE THOMAS, Inmate #B80679,     ) | |
|         ) | |
|      Plaintiff,     ) | |
|         ) | |
| vs.     ) | |
|         ) | |
| K E L L Y   R H O D E S ,   R A K E S H A ) | |
| CHANDRA, KATHERINE CLOVER, ) | |
| JILL STEVENS, ROCKY PEPPERS, ) | |
| KRISTIN KWASNIEWSKI, MARVIN ) | |
| POWERS, STACY WILLIAMSON, ) | |
| LINDA MILEUR, KAY JORDAN, ) | CIVIL NO. 04-016-DRH |
| KATHY REYNOLDS, JANE SIMMONS, ) | |
| L A V A D A   P E A R S O N ,   B R A D ) | |
| HOUSEWRIGHT, WILLIAM MURRAY, ) | |
| ED WAGONER, MIKE TURNER, CHAD ) | |
| PARRISH, DOUG HALTERMAN, MARK ) | |
| BOWERS, ALBERT WEHEIMER, ) | |
| DAVID FOLSOM, CARRIE TAYLOR, ) | |
| PAUL HILLIARD, KEITH BENIFIELD, ) | |
| CHARLES BLANKENSHIP, C/O ) | |
| CALDWELL, and C/O CHILDRESS, ) | |
|         ) | |
|      Defendants.     ) | |

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Plaintiff, an inmate in the Tamms Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff has tendered the full filing fee.

The Court will first perform a preliminary review of the complaint pursuant to 28 U.S.C. § 1915(e)(2), which provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that –
> (A) the allegation of poverty is untrue; or

(B) the action or appeal –
    (I) is frivolous or malicious;
    (ii) fails to state a claim on which relief may be granted; or
    (iii) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).  An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915(e)(2)(B); portions of this complaint are frivolous and thus subject to summary dismissal.

FACTUAL BACKGROUND

In brief, Plaintiff has a history of self-mutilation and suicide attempts.  On the one hand, he claims that Defendants fail to take proper steps to ensure that he cannot harm himself; on the other hand, he complains about the inhumanity of the steps they do take to prevent self-harm.  Plaintiff wraps several of his claims within the cloak of retaliation--he asserts that actions taken by Defendants are done in retaliation for grievances and lawsuits he has filed against them in the past.

COUNT 1

Plaintiff states that on March 5, 2002, he was on crisis watch at Tamms when he began self-mutilating in an unspecified manner.  Defendant Kwasniewski removed Plaintiff from the cell for medical treatment, but after the treatment, she returned him to the same cold cell, naked.  Plaintiff states that he was cutting himself because he was naked in a cold cell, and that by returning him to the cell, Defendant Kwasniewski failed to protect him from self-harm, in violation of the Eighth Amendment.

A prison official violates the Eighth Amendment when he is deliberately indifferent to a substantial risk of serious harm to an inmate. *See Payne for Hicks v. Churchich*, 161 F.3d 1030,

1040 (7ᵗʰ Cir. 1998).  That official will be liable only if he or she "knows of and disregards and excessive risk to the inmate health or safety."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  In this case, Plaintiff was already on crisis watch for self-mutilation.  He was removed from the cell and his injuries treated.  That Defendant Kwasniewski returned Plaintiff to the crisis watch cell, where he was to be observed in case of self-mutilation, shows that she did not disregard the risk to Plaintiff's safety, but instead attempted to keep Plaintiff from causing himself further harm.  As such, Count 1 is **DISMISSED** from the action with prejudice.  *See* 28 U.S.C. § 1915(e)(2)(B)

COUNT 2

Plaintiff next alleges that on March 18, 2002, Defendant Kwasniewski placed Plaintiff on suicide watch for the sole purpose of retaliating against him for filing a grievance regarding the above-noted March 5 occurrences.  Plaintiff states that he had not displayed any suicidal tendencies and was already on suicide-watch before he began self-mutilating by scraping his arm on the vent in the cell.

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement.  *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7ᵗʰ Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7ᵗʰ Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7ᵗʰ Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7ᵗʰ Cir. 1988).  Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer."  *Higgs v. Carver*, 286 F.3d 437, 439 (7ᵗʰ Cir. 2002).  Therefore, the Court is unable to dismiss Count 2 at this point in the litigation.  *See* 28 U.S.C. § 1915(e)(2)(B).

COUNT 3

Plaintiff states that on March 5, 2002, while he was on suicide watch, he was placed in four-

point restraints, naked, in a cold cell for 16 hours.  Plaintiff states that being kept in the cold cell, where cold air was blowing from the vents, was cruel and unusual punishment.  Plaintiff states that Brad Housewright, the chief engineer, was responsible for maintaining temperatures inside cells at Tamms.

In a case involving conditions of confinement in a prison, two elements are required to establish violations of the Eighth Amendment's cruel and unusual punishments clause.  First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety.  *Farmer*, 511 U.S. at 834.  The second requirement is a subjective element–a plaintiff must establish a defendant's culpable state of mind.  *Id.*

Prisoners have an Eighth Amendment right to adequate shelter, including a right to protection from cold.  *See Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997).  To assess whether cold cell temperatures constitute cruel and unusual punishment, courts must consider factors including "the severity of the cold; its duration; whether the prisoner has alternative means to protect himself from the cold; the adequacy of such alternatives; as well as whether he must endure other uncomfortable conditions as well as cold."  *Id.* at 644; *see also Palmer v. Johnson*, 193 F.3d 346 (5th Cir. 1999) (finding that exposure to extreme cold for 17 hours could constitute Eighth Amendment violation); *Henderson v. DeRobertis*, 940 F.2d 1055, 1058 (7th Cir. 1991) (finding that deprivation of blankets for four days in extreme cold could constitute Eighth Amendment violation).  The cold need not present an imminent threat to the inmate's health to implicate the Eighth Amendment.  *See Dixon*, 114 F.3d at 642.  Even if Plaintiff's allegations were sufficient to satisfy the first *Farmer* prong, in that sixteen hours naked in cold cell might have denied Plaintiff "the minimal civilized

- 4 -

measures of life's necessities," the claim fails because Plaintiff has not alleged that Brad Housewright, chief engineer, possessed the requisite culpable state of mind.  Accordingly, Count 3 is **DISMISSED** from the action without prejudice.  *See* 28 U.S.C. § 1915(e)(2)(B).

## COUNT 4

Plainiff states that on April 9, 2002, Defendants Reynolds, Simmons, Pearson, Murray, Wagoner, Blankenship, and Caldwell violated the Eighth Amendment by failing to protect him from harm, acting with deliberate indifference to his serious medical needs, and forcing him to live in unsanitary living conditions.  Plaintiff states that while on suicide watch, he continued to mutilate himself.  At approximately 10:00 P.M., Corrections Officer ("C/O") Sweatland (not a defendant) saw Plaintiff self-mutilating, but did not notify any medical staff that Plaintiff was harming himself.  At approximately 11:00 P.M., Defendants Caldwell, Reynolds, Pearson, and Simmons, all saw that Plaintiff was cutting on himself, but did nothing to stop the behavior and did not notify any mental health staff of the behavior.  At approximately 2:00 A.M., Defendant Blankenship saw that Plaintiff had the tip of an ink pen in the cell and was using that to cut himself.  Even after being alerted to this fact, none of the following Tamms officials--Blankenship, Lt. Wagoner, Sgt. Murray, C/O Busby (not a defendant), C/O Caldwell, C/O Massey (not a defendant), C/O Bernard (not a defendant), Nurse Simmons, Nurse Pearson, and Nurse Reynolds--took any steps to stop Plaintiff from self-harm.  Plaintiff states that he was left in the cell, that by now had blood on the walls and floor, until 7:00 A.M. when he was removed by Captain Johnson (not a defendant) and treated by nursing staff.

Plaintiff first alleges that Defendants' inaction amounts to a constitutional violation for failure to protect him from harming himself and for deliberate indifference to his serious medical needs.

- 5 -

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer*, 511 U.S. 825. This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle,* 429 U.S. at 106. *See also Jones v. Simek,* 193 F.3d 485, 489 (7th Cir. 1999); *Steele v. Choi,* 82 F.3d 175, 178 (7th Cir. 1996), *cert. denied,* 519 U.S. 897 (1996).

> A prisoner raising an Eighth Amendment claim against a prison official therefore must satisfy two requirements. The first one is an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at ----, 114 S.Ct. at 1977. As the Court explained in *Farmer*, "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* The second requirement is a subjective one: "[A] prison official must have a 'sufficiently culpable state of mind,'" one that the Court has defined as "deliberate indifference." *Id; see Hudson v. McMillian*, 503 U.S. 1, 5, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992) ("[T]he appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.'"); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'").

*Vance v. Peters,* 97 F.3d 987, 991-992 (7th Cir. 1996), *cert. denied,* 520 U.S. 1230 (1997). However, the Supreme Court stressed that this test is not an insurmountable hurdle for inmates raising Eighth Amendment claims:

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.... Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer,* 511 U.S. at 842.

- 6 -

The Seventh Circuit's decisions following this standard for deliberate indifference in the denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm. The Circuit also recognizes that a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation.

> Neglect of a prisoner's health becomes a violation of the Eighth Amendment only if the prison official named as defendant is deliberately indifferent to the prisoner's health – that is, only if he 'knows of and disregards an excessive risk to inmate health or safety.'

*Williams v. O'Leary*, 55 F.3d 320, 324 (7th Cir.), *cert. denied,* 516 U.S. 993 (1995).

Plaintiff filed a grievance related to this incident (TM-02-056-034, dated April 23, 2002) indicating that when Wagoner ordered Plaintiff to give him the ink pen, which he held between his teeth, Plaintiff "shook his head, smiled, opened his mouth and began rolling his tongue around to indicate he had swallowed the item."

Based on the allegations contained in Count 4 the Court cannot dismiss this count at this time. *See* 28 U.S.C. § 1915(e)(2)(B).

## COUNT 5

Plaintiff states that between April 9 and 21, 2002, Defendants Rhodes, Chandra, Clover, Stevens, and Peppers retaliated against Plaintiff for filing grievances and a prior lawsuit by taking the following actions. On April 9, Plaintiff was placed naked in a cold suicide-watch cell for his self-mutilation for sixteen hours. On April 12, Plaintiff was given medication by force that caused him to be "knocked out cold" until April 14. On April 15, he was denied access to his legal materials, despite a court deadline. On April 17, he was still denied legal and personal mail while he was on psychiatric observation. Later that day he was put in restraints, naked, in a cold cell for

sixteen hours without any evaluation by medical staff. On April 18, he was given a smock to wear, but was forced to stay on suicide watch in a cold cell and he was forced to sleep on the concrete floor for two days. On April 19, Plaintiff was denied legal mail privileges despite a court deadline.

As noted above, prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Therefore, the Court is unable to dismiss Count 5 at this point in the litigation. *See* 28 U.S.C. § 1915(e)(2)(B).

## COUNT 6

Plaintiff alleges that on May 27, 2002, he was on suicide watch, yet he continued to self-mutilate. Plaintiff states that Defendants Mileur and Childress knew that he was cutting himself, but failed to do anything to stop him, until Plaintiff showed Defendant Childress that he had the tip of a pen that he was using to cut himself. Plaintiff was then placed in restraints. Plaintiff states that during the time that he was cutting himself, Defendant Childress was standing outside the cell, encouraging Plaintiff to continue self-mutilating.

As stated above, a prison official violates the Eighth Amendment when he is deliberately indifferent to a substantial risk of serious harm to an inmate. *See Payne for Hicks v. Churchich*, 161 F.3d 1030, 1040 (7th Cir. 1998). That official will be liable only if he or she "knows of and disregards and excessive risk to the inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Plaintiff states that as soon as Defendants Mileur and Childress were aware that Plaintiff

had the tip of a pen, he was placed in restraints.  He was already on a suicide watch.  Up to this point, Plaintiff has failed to state a claim of constitutional magnitude, as Defendants Mileur and Childress were not deliberately indifferent to Plaintiff's needs and were in fact attempting to prevent Plaintiff from harming himself.  However, Plaintiff states that Defendant Childress, prior to placing him in restraints, encouraged him to hurt himself.  Accordingly,  Plaintiff is allowed to proceed on Count 6 as to Defendant Childress.  However, Defendant Mileur is **DISMISSED** from this Count of the complaint.  *See* 28 U.S.C. §1915(e)(2)(B).

## COUNT 7

Plaintiff states that on May 31, 2002, Defendants Simmons and Jordan placed Plaintiff in restraints because he had been cutting himself.  After he had been in restraints for twelve hours, Plaintiff no longer felt like harming himself and he asked Defendants Simmons and Jordan to remove the restraints, but they refused, telling him that he would have to stay in restraints for the full sixteen-hour period prescribed by Dr. Chandra.  Plaintiff states that Defendants Simmons and Jordan violated the Eighth Amendment and subjected him to cruel and unusual punishment when they refused to remove the restraints.

What Plaintiff describes in this count is most like a medical claim, in that Plaintiff disagreed with Defendant Chandra's prescribed period of restraint.  However, mere disagreement with a physician's chosen course of an inmate's medical treatment does not amount to deliberate indifference under the Eighth Amendment.  *See Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).

As to Plaintiff's claim that keeping him restraints was cruel and unusual punishment, Plaintiff has failed to state a constitutional claim.  It is apparent from the claims in this complaint that Plaintiff exhibits a pattern of causing himself harm, being placed on suicide watch, sometimes

in restraints, then complaining when the conditions in suicide watch are either too harsh, or when they fail to keep him from hurting himself. These claims are self-contradictory. Plaintiff himself states that he should be prevented from harming himself. Yet, when Defendants here attempted to do so, Plaintiff complains of the manner in which it was done. How were Defendants to know, given Plaintiff's history, that his statement that he no longer felt like harming himself was genuine? Defendants erred here on the side of protecting Plaintiff from self-harm, something Plaintiff himself repeatedly states throughout this complaint they are under a duty to do. As such, the Court finds that Plaintiff has not stated a claim of constitutional dimension that he was left in restraints a few hours longer than Plaintiff believed necessary. Accordingly, Count 7 is **DISMISSED** from the action with prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

## COUNT 8

Plaintiff alleges that on May 30, 2002, while Plaintiff was on suicide watch, Defendant Kwasniewski performed an evaluation of Plaintiff to determine whether he could return to his cell. She determined, in a retaliatory act according to Plaintiff, that he should stay on suicide watch. Plaintiff also states that this decision denied him equal protection because Defendant Kwasniewski allowed another inmate who had been on suicide watch to return to his cell. As a result, Plaintiff states, Plaintiff began self-mutilating. Plaintiff states that Defendants Taylor, Hillard, and Benifield failed to protect him from harming himself by leaving him in his cell when they knew he was self-mutilating.

### *Retaliation*

As stated above, prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Walker v. Thompson*, 288

F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988).  Accordingly, the retaliation claim against Defendant Kwasniewski cannot be dismissed from the action at this time.

### Equal Protection

To state an equal protection claim, Plaintiff must show that he was discriminated against based on a constitutionally protected characteristic.  *See Jones v. Ray*, 279 F.3d 944, 946,47 (11th Cir. 2001) (affirming dismissal pursuant to section 1915, finding that to state an equal protection claim a prisoner must allege facts that show he a) is similarly situated with other inmates who received "more favorable treatment," and b) was treated differently on the basis of a constitutionally protected interest).  Plaintiff states that he was treated differently from other inmates on suicide watch.  Inmates on suicide watch are not a protected class.  Furthermore, the decision to keep Plaintiff on suicide watch was not arbitrary, but based on a psychological evaluation.  That other inmates were allowed to return to their cells was irrelevant to the decision to keep Plaintiff on suicide watch.   Accordingly, the equal protection claim against Defendant Kwasniewski is **DISMISSED** from the action with prejudice.

### Failure to protect

As stated previously, a prison official violates the Eighth Amendment when he is deliberately indifferent to a substantial risk of serious harm to an inmate.  *See Payne for Hicks v. Churchich*, 161 F.3d 1030, 1040 (7th Cir. 1998).  That official will be liable only if he or she "knows of and disregards and excessive risk to the inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  On this date, Plaintiff was already on suicide watch.  He states that he began cutting himself because he wanted to go back to his cell and that Defendants intentionally left him in his cell even

when they knew he was self-mutilating.  According to a grievance submitted by Plaintiff with the complaint (grievance TM-02-07-017, dated June 5, 2002), Plaintiff was seen by medical staff three times, mental health staff three times (although he refused to speak with them two of those times), and by the medical director between 9:40 A.M. (the time Plaintiff was placed back on suicide watch) and 1:15 P.M.  Clearly, this is not deliberate indifference.[1]  Accordingly, Plaintiff has failed to state a deliberate indifference claim.  In summary, Plaintiff is allowed to proceed against Defendant Kwasniewski on the retaliation claim stated in this Count.  All other claims in Count 8 are **DISMISSED** from the action with prejudice.  *See* 28 U.S.C. § 1915(e)(2)(B).

## COUNT 9

Plaintiff alleges that on June 20, 2002, Defendant Peppers, in retaliation for past grievances, placed Plaintiff in crisis watch, even though Plaintiff was not a threat to himself, and refused him legal papers and other property.  Plaintiff states that Defendant Peppers released another inmate from suicide watch but left Plaintiff in crisis watch, in violation of equal protection.

As noted above, prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement.  *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988).  Accordingly, the retaliation claim against Defendant Peppers cannot be dismissed from the action at this time.

Plaintiff, however, has failed to state an equal protection claim for the same reasons specified

---

[1]"A plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts . . . .  Allegations in a complaint are binding admissions . . . and admissions can of course admit the admitter to the exit from the federal courthouse." *Jackson v. Marion County*, 66 F.3d 151, 153 (7th Cir.1995).

in Count 8, above.  Accordingly, this claim is **DISMISSED** from the action with prejudice.  *See* 28 U.S.C. § 1915(e)(2)(B).

## COUNT 10

Plaintiff states that on September 26, 2002, Defendant Chandra left Plaintiff in restraints for the full sixteen-hour prescribed period even though Plaintiff believed that he would not harm himself after only twelve hours.  Plaintiff states that Dr. Chandra did this in retaliation for filing grievances and a lawsuit.  Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement.  *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988).  Accordingly, Count 10 cannot be dismissed from the action at this time.  *See* 28 U.S.C. § 1915(e)(2).

## COUNT 11

Plaintiff states that on October 1, 2002, Defendants Chandra and Clover refused to provide him a pencil while on crisis watch, despite his court deadline, in retaliation for filing grievances and a prior lawsuit.  As noted above, prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement.  *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988).  Accordingly, Count 11 cannot be dismissed from the action at this time.  *See* 28 U.S.C. § 1915(e)(2).

## COUNT 12

Plaintiff states that on July 7, 2002, he began self-mutilating in his cell.  He pressed the emergency call button and told C/O Francis (not a defendant) that he needed medical attention.  C/O

- 13 -

Francis stated, "stand by the door and show me blood running under the door and then I will call someone."  At approximately 9:30 A.M., Defendant Folsom came to the cell, saw Plaintiff cutting himself, and stated, "make sure you do a good job."  He then left without alerting medical personnel. At 11:00 A.M., Defendant Folsom returned to the unit to deliver lunches.  Defendant Folsom told Plaintiff he would not give him his lunch until he stopped cutting himself.  Plaintiff did not receive his meal.  At 11:30 A.M., Plaintiff again pressed the emergency call button and told C/O Rickey Pedigo (not a defendant) that he needed to see a Lieutenant or medical personnel, but his request was ignored.  When Defendant Folsom returned to the unit to collect lunch trays, Plaintiff intentionally covered his cell door with his mattress and refused to take it down until Lieutenant Wright (not a defendant) came to the door.  Plaintiff states that Defendant Folsom had refused to provide Plaintiff with medical care in retaliation for filing lawsuits and grievances against him.  Plaintiff states that Lieutenant Wright left Plaintiff alone in his cell, cutting himself for 20 minutes before C/Os Stewart (not a defendant), Benifield, and Weheimer removed him from the cell.  At the time of removal, those officers performed a body cavity search before Plaintiff was taken to the nurses station.

Plaintiff states that at the nurses station Defendant Kwasniewski attempted to talk to him, he refused to cooperate and she "retaliated" against him by putting him in a cold cell, naked, on suicide watch, event though, according to Plaintiff, she knew he was not suicidal.

Plaintiff states that Defendants Weiheimer, Benifield, and Turner, and Captain Bartley (not a defendant), escorted him to the suicide cell and performed a second strip search to humiliate him and for their own sexual gratification.  After Plaintiff was placed in the cold cell, naked, he found a piece of caulking around the light fixture and began using it to cut himself.  Plaintiff told C/O Brooks (not a defendant) that he needed medical help.  Defendants Benifield, Turner, and Weheimer,

- 14 -

and C/O Harvel and Nurse Montgomery (not defendants) came to the cell at approximately 2:30 P.M. and saw that he was cutting.  However, they left and did not do anything to help Plaintiff for one hour, at which time he was taken to the Health Care Unit in restraints.

Plaintiff states that by 11:30 P.M., he told Defendant Williamson that he was ready to come out of the restraints and that he no longer wanted to hurt himself, but she refused to contact mental health personnel to seek authorization for early removal of the restraints.

Plaintiff claims that Defendants Kwasniewski, Williamson, Turner, Weheimer, Folsom, and Benifield, by these actions, violated Plaintiff's First, Fourth, and Eighth Amendment rights in that they improperly retaliated against him, performed unnecessary searches, failed to protect him from harm, and were deliberately indifferent to his serious medical needs.

### Retaliation

Based on the legal standards outlined in Counts 2, 5, and 8, the claim against Defendants Kwasniewski and Folsom cannot be dismissed at this point in the litigation.

### Strip Search

As to Plaintiff's Fourth Amendment claim of improper search and seizure as a result of the strip searches, the Court notes that prisoners retain a limited expectation of privacy in their persons. *Forbes v. Trigg*, 976 F.2d 308, 312 (7th Cir. 1992), *cert. denied*, 113 S.Ct. 1362 (1993).  Body searches must therefore be reasonable.  Deciding what is reasonable "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails."  *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).  Courts must consider the scope of the intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.  *Id.*

Strip searches that are not related to legitimate security needs or are designed to harass may be found unconstitutional under the Fourth Amendment or the Eighth Amendment. *Seltzer-Bey v. Delo*, 66 F.3d 961 (8th Cir. 1995) (prisoner's Fourth Amendment claim survived summary judgment where prisoner alleged that guard conducted strip searches during which he commented about prisoner's penis and buttocks, rubbed his buttocks with a nightstick, and asked him whether it reminded him of something); *Burton v. Kuchel*, 865 F.Supp. 456 (N.D.Ill. 1994) (prisoner's Fourth Amendment claim survived summary judgment where prisoner alleged that he was strip searched every day for approximately one month; court held that a finding of harassment may be justified); *Blanks v. Smith*, 790 F.Supp. 192 (E.D.Wis. 1992) (allegations of daily strip and cell searches for two weeks stated an Eighth Amendment claim); *Meriwether v. Faulkner*, 821 F.2d 408 (7th Cir. 1987) (allegation of calculated harassment by strip searches stated Eighth Amendment claim), *cert. denied*, 484 U.S. 935 (1987).   In the instant case, Plaintiff alleges that he was strip searched a second time before being put on suicide watch to harass him and for the sexual enjoyment of the correctional officers involved.  It does not seem unreasonable, given Plaintiff's history of cutting himself while on suicide watch, that corrections officers and medical staff would want to ensure that Plaintiff has no means by which he can inflict harm upon himself before putting him in a suicide watch cell.  However, Plaintiff alleges that the strip search was done in an effort to harass him and for the sexual gratification of the guards.  Based on this allegation, this claim against Defendants Weiheimer, Benifield, and Turner may not be dismissed at this point in the litigation.

### *Failure to protect*

As stated previously, a prison official violates the Eighth Amendment when he is deliberately indifferent to a substantial risk of serious harm to an inmate.  *See Payne for Hicks v. Churchich*, 161

F.3d 1030, 1040 (7ᵗʰ Cir. 1998). That official will be liable only if he or she "knows of and disregards and excessive risk to the inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The facts as described by Plaintiff do not indicate that Defendants disregarded an excessive risk to Plaintiff's health or safety. On the contrary, by Plaintiff's own admission medical and prison personnel took many precautions to prevent Plaintiff from harming himself. As such, Plaintiff has failed to state a failure to protect claim.

### Deliberate Indifference

To state a viable Eighth Amendment claim, a plaintiff must present allegations that a defendant was deliberately indifferent to his serious medical needs. *Estelle*, 429 U.S. at 104.

> In order to state a claim of cruel and unusual punishment under the Eighth Amendment, a prisoner must allege "'acts and omissions sufficiently harmful to evidence deliberate indifference to serious medical needs,'" *Benson v. Cady*, 761 F.2d 335, 340 (7ᵗʰ Cir. 1985), *quoting Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). "[T]he infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth [v. Franzen]*, 780 F.2d [645,] 652-53 [(7ᵗʰ Cir. 1985), *cert. denied*, 107 S.Ct. 71 (1986)]. Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. *Id.* at 653.

*Shockley v. Jones*, 823 F.2d 1068, 1072 (7ᵗʰ Cir. 1987). Allegations of "refusal" to provide medical care, without more, will not establish deliberate indifference, nor will delay, even if serious injury results. *Id.*

According to Plaintiff's statements, medical personnel were summoned and steps were taken in an effort to interfere with Plaintiff's self-mutilation. Therefore, the Court cannot find that Defendants were deliberately indifferent to his medical needs. Furthermore, Defendant Williamson's decision not to remove Plaintiff from restraints, given his behavior, was warranted and cannot be the basis of a deliberate indifference claim. At best, Plaintiff disagreed with that medical

decision.  As stated above, however, mere disagreement with a physician's chosen course of an inmate's medical treatment does not amount to deliberate indifference under the Eighth Amendment. *See Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).

In summary, Plaintiff may proceed against Defendants Folsom and Kwasniewski on the retaliation claim and against Defendants Weheimer, Benifield, and Turner on the unconstitutional search claim.  All other claims and Defendants in Count 12 are **DISMISSED** from the action with prejudice.  *See* 28 U.S.C. § 1915(e)(2)(B).

## COUNT 13

Plaintiff alleges that on September 25, 2002, Defendant Chandra prematurely removed him from suicide watch.  When Plaintiff returned to his cell, he continued self-mutilating.  Plaintiff states that Defendant Chandra failed to protect him from harm by sending him back to his cell.  Plaintiff states that he never should have been removed from suicide watch.

Exhibits filed with the complaint belie this factual assertion.  The response to a grievance Plaintiff filed regarding this event (grievance TM 02-11-140, dated October 31, 2002) indicates that Plaintiff was housed in the infirmary on either suicide or crisis watch from September 23 through October 3, 2002.  At various times during this period Plaintiff was placed in restraints and all property was taken from him.  Based on this exhibit, it cannot be argued the Defendant Chandra disregarded an excessive risk to Plaintiff's health or safety.  Accordingly, Plaintiff has failed to state a claim; Count 13 is **DISMISSED** from the action with prejudice.  *See* 28 U.S.C. § 1915(e)(2)(B).

## COUNT 14

Plaintiff states that on January 3, 2003, he was self-mutilating.  Defendants Rhodes and Chandra placed him in restraints even though, according to Plaintiff, he was not suicidal, in

retaliation for filing grievances and lawsuits.

Based on the legal standards for improper retaliation stated above (see Counts 2, 5, and 8), Count 14 against Defendants Rhodes and Chandra cannot be dismissed at this point in the litigation. *See* 28 U.S.C. § 1915(e)(2)(B).

## COUNTS 15 AND 16

In Count 15, Plaintiff alleges that on January 10, 2003, he was in the health care unit and began cutting himself.  Defendants Bowers and Powers both saw Plaintiff self-mutilating at 10:00 A.M., but he did not receive any medical treatment until 3:00 P.M.  Plaintiff asserts that Defendants Bowers and Powers intentionally left him alone, without medical treatment for five hours, in retaliation for filing grievances.  Furthermore, their behavior showed deliberate indifference to his serious medical needs.

In Count 16, Plaintiff alleges that at 3:30 P.M. on the same date, Defendant Chandra placed him in restraints even though he was not suicidal and had not committed self-harm since 10:00 A.M., in retaliation for filing grievances.  Furthermore, Defendant Chandra's placement of the Plaintiff in restraints constituted cruel and unusual punishment in violation of the Eighth Amendment.

Plaintiff's claims here are self-contradictory.  He states that Defendants Bowers and Powers refused to do anything for his self-mutilating but that when Defendant Chandra did something–place him in restraints–it was cruel and unusual punishment.  Plaintiff cannot have it both ways.  At the time of the cutting, Plaintiff was already on suicide watch in the health care unit.  According to a grievance submitted with the complaint (grievance TM-03-02-124, dated January 15, 2003), Plaintiff was not actively cutting, but picking at a scabs in an attempt to make his arm bleed.  He did manage

to extract a few drops of blood from one of the scabs, but it was not enough to cause active bleeding, even though Plaintiff was flinging and flailing his arms.  Defendant Bowers was in the infirmary monitoring Plaintiff the entire time.  After he finished picking at the scabs, he was "up and about 'rapping' with no complaints."  However, his mood took a turn, and by 3:45 he had become agitated and was verbally abusive with staff, which caused Defendant Chandra to place him in restraints.

Based on this exhibit, Plaintiff has again pled himself out of court.  There is no indication from the exhibit, submitted by Plaintiff himself, that any of these actions constituted retaliation, failure to protect, or cruel and unusual punishment.  Accordingly, Counts 15 and 16 are **DISMISSED** from the action with prejudice.  *See* 28 U.S.C. § 1915(e)(2)(B).

## COUNT 17

Plaintiff states that on February 21, 2003, at 5:30 P.M. he told Defendant Childress that he was having a crisis and he needed to speak to a Lieutenant.  At 6:30 P.M. Defendant Parrish came to Plaintiff's cell and Plaintiff told him he was going to start self-mutilating.  Defendants Parrish and Childress did nothing.  At 7:30 Plaintiff began cutting himself.  At that time unspecified action was taken to stop the self-harm.  Plaintiff states that Defendants Childress and Parrish failed to protect him from harm.

Based on the legal standards described above in Count 1, Plaintiff has failed to state a failure-to-protect claim on these facts.  Plaintiff requested to speak to a Lieutenant and was allowed to do so.  As soon as he began self-mutilating, action was taken to stop him.  These statements to not indicate that Defendants Childress and Parrish disregarded any risks.  Accordingly, Count 17 is **DISMISSED** from the action with prejudice.  *See* 28 U.S.C. § 1915(e)(2)(B).

## COUNT 18

Plaintiff alleges that on April 24, 2003, Defendant Halterman threatened to tamper with his food in an act of retaliation and harassment.  On the same day at approximately 12:30, P.M., Toma Osman (not a defendant) brought from the library some magazines Plaintiff had requested to his cell, but Plaintiff was unable to retrieve them through the food slot.  This frustrated Plaintiff and he told Ms. Osman that he wanted to see "someone about my situation."  After ten minutes when no one came, Plaintiff pushed the emergency call button and told C/O Frazee (not a defendant) that he needed to speak with someone from mental health because he was feeling like he wanted to harm himself.  At approximately 1:00 P.M., after no response, Plaintiff began to cut his arm, seriously injuring himself.  Other inmates on the wing called for help for Plaintiff, but no one came to the cell until 2:20 P.M.

Plaintiff was taken to the nurses unit and immediately put in four-point restraints without an evaluation by mental health staff.  Defendant Powers cleaned his wounds and gave him stitches, but without any anesthetic, causing unnecessary pain.  Plaintiff states that Defendant Powers did this to cause him pain and in retaliation for filing grievances and lawsuits.  While Plaintiff was in restraints, Defendant Mileur refused to allow Plaintiff to use the urinal and used a racial epithet in so refusing.  Plaintiff was forced to hold his urine, causing abdominal pain.  Plaintiff asked nursing staff to release him from the restraints because he no longer wanted to harm himself and he was in pain.  Defendant Simmons offered to call Defendant Chandra to see if Plaintiff could be released from the restraints, but he was not removed from them.  Plaintiff states that all the actions described in this count were taken by Defendants in retaliation for filing grievances and lawsuits.  Plaintiff states that the actions also violated the Eighth Amendment in that he was denied proper medical care, subjected to cruel and unusual punishment, and excessive force was used against him.

***Retaliation***

Based on the legal standards outlined in Counts 2, 5, and 8, the retaliation claim against Defendants Rhodes, Chandra, Powers, Mileur, Simmons, and Halterman cannot be dismissed at this point in the litigation.

***Denial of Medical Care***

According to the facts as described by Plaintiff, Plaintiff was not denied medical care. Although he may have had to wait for medical staff to come to his cell, the delay was not inordinately long.  As stated above, to state a viable Eighth Amendment claim, a plaintiff must present allegations that a defendant was deliberately indifferent to his serious medical needs. *Estelle*, 429 U.S. at 104.

> In order to state a claim of cruel and unusual punishment under the Eighth Amendment, a prisoner must allege "'acts and omissions sufficiently harmful to evidence deliberate indifference to serious medical needs,'" *Benson v. Cady*, 761 F.2d 335, 340 (7th Cir. 1985), *quoting Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976).  "[T]he infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth [v. Franzen]*, 780 F.2d [645,] 652-53 [(7th Cir. 1985), *cert. denied*, 107 S.Ct. 71 (1986)].  Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. *Id.* at 653.

*Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987).  Allegations of "refusal" to provide medical care, without more, will not establish deliberate indifference, nor will delay, even if serious injury results.  *Id.*

In this claim, it appears that medical personnel were summoned, and steps were taken in an effort to interfere with Plaintiff's self-mutilation.  Therefore, the Court cannot find that Defendants were deliberately indifferent to his medical needs.  Furthermore, Defendant Simmons's decision not to remove Plaintiff from restraints, given his behavior, was warranted and cannot be the basis of a

deliberate indifference claim.

***Excessive Force***

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under Section 1983. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action. . . . [the] prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10; *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001). It is unclear to the Court which part of these facts constitutes excessive force. To the extent that Plaintiff is claiming that being held in restraints longer than he believed necessary, the claim fails because the force applied there was used in an attempt to stop Plaintiff from harming himself. As such, Plaintiff fails to state an excessive force claim on the basis of these facts.

In summary, Plaintiff is allowed to proceed on the retaliation claim against Defendants Rhodes, Chandra, Powers, Mileur, Simmons, and Halterman. All other claims and defendants alleged in Count 18 are **DISMISSED** from the action with prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

## COUNT 19

On June 13, 2003, while Plaintiff was in the law library, Captain Johnson confiscated his eyeglasses on the order of Tamms Mental Health personnel.  Plaintiff states that he needs his glasses for reading and to see properly and that the glasses were taken from him in retaliation for filing grievances and lawsuits and in an attempt to provoke him into self-harm.  Plaintiff states that this action violated his First and Eighth Amendment rights and constitutes deliberate indifference to a serious medical need.

According to Nurse Terry Caliper's (not a defendant) response on a resident request form (dated July 6, 2003), Plaintiff's glasses were confiscated by Defendant Powers because of "increased incidences of self-harm behavior."   Plaintiff was informed that Plaintiff will be re-evaluated regarding when the glasses can be returned by medical staff.  The report states that Plaintiff needs the glasses only for reading.

### Retaliation

Based on the legal standards stated above in Counts 2, 5, and 8, the retaliation claim against Defendants Rhodes, Chandra, Clover, Stevens, Peppers, and Powers cannot be dismissed at this point in the litigation.

### Deliberate Indifference

To state a viable Eighth Amendment claim, a plaintiff must present allegations that a defendant was deliberately indifferent to his serious medical needs.  *Estelle*, 429 U.S. at 104.

> In order to state a claim of cruel and unusual punishment under the Eighth Amendment, a prisoner must allege "'acts and omissions sufficiently harmful to evidence deliberate indifference to serious medical needs,'" *Benson v. Cady*, 761 F.2d 335, 340 (7th Cir. 1985), *quoting Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976).  "[T]he infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or

reckless in the criminal law sense." *Duckworth [v. Franzen]*, 780 F.2d [645,] 652-53 [(7th Cir. 1985), *cert. denied*, 107 S.Ct. 71 (1986)]. Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. *Id.* at 653.

*Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987). Whether or not the need for reading glasses is a "serious" medical need is irrelevant to the question whether Plaintiff has stated a claim for deliberate indifference, because Plaintiff has not shown the requisite mental intent on the part of defendants. In an exhibit submitted by Plaintiff himself indicates that the glasses were taken in an attempt to prevent Plaintiff from harming himself. As such, Plaintiff has failed to state a deliberate indifference claim.

In summary, Plaintiff is allowed to proceed on the retaliation claim against Defendants Rhodes, Chandra, Clover, Stevens, Peppers, and Powers. All other claims alleged in Count 19 are **DISMISSED** from the action with prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

SUMMARY AND CONCLUSION

Plaintiff is allowed to proceed against the following defendants on the following claims: against Defendant Kwasniewski on Count 2; against Defendants Reynolds, Simmons, Pearson, Murray, Wagoner, Blankenship and Caldwell on Count 4; against Defendants Rhodes, Chandra, Clover, Stevens, and Peppers on Count 5; against Defendant Childress on the deliberate indifference claim in Count 6; against Defendant Kwasniewski on the retaliation claim in Count 8; against Defendant Peppers on the retaliation claim in Count 9; against Defendant Chandra on Count 10; against Defendants Chandra and Clover on Count 11; against Defendants Folsom and Kwasniewski on the retaliation claim in Count 12; against Defendants Weiheimer, Benifield, and Turner on the unconstitutional strip search claim in Count 12; against Defendants Rhodes and Chandra on Count 14; against Defendants Rhodes, Powers, Mileur, Simmons, and Halterman on the retaliation claim

- 25 -

in Count 18; and against Defendants Rhodes, Chandra, Clover, Stevens, Peppers, and Powers on the retaliation claim in Count 19.

Because all claims against them have been dismissed from the action, Defendants  Bowers, Hilliard, Housewright, Jordan, Parrish, Taylor, and Williamson are **DISMISSED** from the action.

With respect to Count 3, if the Plaintiff has a good faith reason to believe that the Defendant named therein had the culpable state of mind necessary for the claim stated in that count, Plaintiff is granted 30 days leave to amend the complaint herein to so plead.

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for Defendants ***Benifield, Blankenship, Caldwell, Chandra, Childress, Clover, Folsom, Halterman, Kwasniewski, Mileur, Murray, Pearson, Peppers, Powers, Reynolds, Rhodes, Simmons, Stevens, Turner, Wagoner, and Weheimer***.  The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on Defendants ***Benifield, Blankenship, Caldwell, Chandra, Childress, Clover, Folsom, Halterman, Kwasniewski, Mileur, Murray, Pearson, Peppers, Powers, Reynolds, Rhodes, Simmons, Stevens, Turner, Wagoner, and Weheimer*** in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure.  Process in this case shall consist of the complaint, applicable forms 1A and 1B, and this Memorandum and Order.  For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form.

With respect to former employees of Illinois Department of Corrections who no longer can

be found at the work address provided by Plaintiff, the Department of Corrections shall furnish the Marshal with the Defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal. Address information obtained from I.D.O.C. pursuant to this order shall not be maintained in the court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received.  If a waiver of service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Order upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant.  Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required.  Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon defendant or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court.  He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to

- 27 -

defendant or his counsel.  Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts.  This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.

**IT IS SO ORDERED.**

**DATED: July 5, 2006**


/s/  David  RHerndon
**DISTRICT JUDGE**